ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| FÉLIX OCASIO QUIÑONES<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202400701 | *REVISIÓN ADMINISTRATIVA* procedente de Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 123356<br>Confinado Número: T4-28838<br><br>Sobre: Consideración Libertad Bajo Palabra |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de marzo de 2025.

Comparece ante *nos*, Félix Ocasio Quiñones (Ocasio Quiñones o recurrente) y nos solicita que revisemos una *Resolución* emitida el 4 de octubre de 2024 y notificada el 25 de octubre de 2024, por la Junta de Libertad Bajo Palabra (JLBP o recurrida). Mediante dicha *Resolución*, la JLBP determinó que el recurrente no cualifica para beneficiarse del privilegio de libertad bajo palabra.

Por los fundamentos que expondremos a continuación, se *revoca* la *Resolución* recurrida.

**I.**

Surge del expediente ante *nos* que, el recurrente extingue una Sentencia de veintidós (22) años y seis (6) meses de reclusión en la institución Correccional 1000 en Ponce. El 16 de septiembre de 2021, la JLPB adquirió jurisdicción sobre Ocasio Quiñones para considerar el caso para el disfrute del privilegio de libertad bajo palabra. Posteriormente, el 30 de abril de 2024, la parte recurrida evaluó el caso de Ocasio Quiñones y mediante *Resolución* le denegó el privilegio con fecha de reconsideración para agosto de 2024.

Así las cosas, el 4 de octubre de 2024, notificada el 25 de octubre de 2024, la JLBP emitió una *Resolución* mediante la cual determinó que el recurrente no cualifica para beneficiarse del privilegio de libertad bajo palabra debido a que los factores en su contra son de mayor peso que los factores que lo favorecen. Así pues, la JLBP concluyó que el recurrente propuso el hogar de su progenitora, Carmen Quiñones, en el municipio de Toa Baja y propuso a Enrique Maeste Vega como candidato a amigo consejero, pero se ha solicitado al Departamento de Corrección y Rehabilitación (DCR) la corroboración de ambos recursos en dos (2) ocasiones y no se ha recibido. Indicó, además, que el recurrente propuso a la compañía PJ Environment Group como oferta de empleo, pero según surge del *Informe Breve de Libertad Palabra* del 24 de junio de 2024, esta oferta de empleo no pudo ser corroborada por el DCR.

Así, el 6 de noviembre de 2024, Ocasio Quiñones presentó una *Moción de Reconsideración*. La JLBP no tomó acción sobre la solicitud de reconsideración, por lo cual, el 26 de diciembre de 2024, el recurrente compareció ante *nos* mediante un recurso de *Revisión Judicial* y alegó la comisión del siguiente error:

> **Erró la Junta de Libertad Bajo Palabra al denegar la solicitud del peticionario-recurrente de conceder la libertad bajo palabra, actuando de manera arbitraria y caprichosa, en violación al derecho de rehabilitación del confinado y del debido proceso de ley.**

El 22 de enero de 2025, emitimos una *Resolución* concediéndole a la Oficina del Procurador General de Puerto Rico un término de veinte (20) días para que presentara su posición al recurso. El 27 de febrero de 2025, la JLBP presentó, a través del Procurador General, un *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*. Así las cosas, el 4 de marzo de 2025, el recurrente presentó una *Breve Réplica a Solicitud de Desestimación*.

El 7 de marzo de 2025, la parte recurrida presentó un *Escrito en Cumplimiento de Resolución.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión

judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas

irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de

derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

### B. Junta de Libertad Bajo Palabra

El Artículo VI, Sección 19 de la Constitución de Puerto Rico establece como política pública que el Estado habrá de: "[...] reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1.

En este contexto la Ley Núm. 118 de 22 de julio de 1974, según enmendada (4 LPRA sec. 1501, *et seq.*) (Ley Núm. 118-1974), creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación. Entre los poderes conferidos a la Junta está el decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. De igual forma, en el uso de su discreción, la Junta tendrá facultad para revocar la libertad bajo palabra a cualquier liberado que, por su conducta, revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra. Artículo 3 (a) y (b) de la Ley Núm. 118-1974 (4 LPRA sec. 1503).

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. *Benítez Nieves v. ELA et al.,* 202 DPR 818 (2019). Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias. Artículo 3 de la Ley Núm. 118-1974, *supra.* Así, el liberado bajo palabra tiene una libertad cualificada. *Benítez Nieves v. ELA et al.*, *supra*; *Maldonado Elías v. González Rivera,* 118 DPR 260 (1987).

El Artículo 3-D de la Ley Núm. 118-1974 (4 LPRA sec. 1503d), establece los siguientes criterios que la Junta de Libertad Bajo Palabra debe considerar al momento de analizar el privilegio de libertad bajo palabra:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El historial de ajuste institucional y del historial social y psicológico del confinado, preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Además, en virtud de su propia ley, la Junta tiene facultad y aprobó, el 25 de septiembre de 2024, el Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603.

El Artículo X, Sección 10.1 del Reglamento 9603, establece los Criterios para elegibilidad, a saber:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:
1.    Historial delictivo

a.    La totalidad del expediente penal.

b.    Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.

c. Naturaleza y circunstancias del delito, por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.

d. Si cumplió con el pago de la pena especial para el Fondo de Compensación y Servicios a las Víctimas y Testigos de Delito, dispuesta en el Artículo 48 (i) del Código Penal de 2012, en los casos que aplique.

e. Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o del Servicio de Inmigración y Naturalización.

2. Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.

3. La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.

4. La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima. No obstante, la Junta podrá considerar para el privilegio de libertad bajo palabra a los peticionarios que, debidamente documentados por el Departamento de Justicia Estatal, sean cooperadores.

5. La edad del peticionario.

6. La opinión de la víctima.

[...]

7. El historial social

a. Se tomará en consideración la totalidad del expediente social.

b. Si anteriormente ha estado en libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

i. Cumplimiento y ajustes Institucionales
ii. Si se le revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

c. El historial de ajuste institucional y el historial social preparado por el Departamento de Corrección y Rehabilitación.

d. Si se le han impuesto medidas disciplinarias, disponiéndose que no se tomarán en consideración para efectos de estos criterios aquellas medidas disciplinarias en las cuales ha transcurrido un (1) año

desde la fecha en que se impuso dicha medida disciplinaria. Esto no impedirá que la Junta pueda evaluar el caso cuando el peticionario cuente con alguna medida disciplinaria o se encuentre pendiente de una, incluyendo positivos o positivos administrativos a sustancias controladas.

e.      El historial de trabajo y/o estudio realizado en la institución.

8.      Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

[...]

En cuanto a la concesión o denegatoria del privilegio, la Sección 12.3 (B) del Reglamento 9603 dispone que, "[c]uando la Junta deniegue la libertad bajo palabra, expresará individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan dicha determinación, así como indicará la fecha (mes y año) en que volverá a considerar el caso."

Así pues, aun cuando la decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción del Estado, y no existe un derecho a obtener tales beneficios, el procedimiento para su concesión debe cumplir con ciertas salvaguardas procesales. *Maldonado Elías v. González Rivera, supra,* págs. 275-276.

**III.**

En su señalamiento de error, Ocasio Quiñones aduce que erró la JLBP al denegar su solicitud para conceder la libertad bajo palabra, actuando de manera arbitraria y caprichosa, en violación al derecho de rehabilitación del confinado y del debido proceso de ley.

Por su parte, la parte recurrida en su *Escrito en Cumplimiento de Resolución* señala que el remedio más justo y razonable es devolver el caso a la JLBP para que evalué si Ocasio Quiñones debe ser acreedor del privilegio de libertad bajo palabra, dado a que la

agencia recibió la corroboración del criterio del hogar propuesto el 10 de febrero de 2025.

De conformidad con los hechos aquí reseñados, el 4 de octubre de 2024, notificada el 25 de octubre de 2024, la JLBP emitió una *Resolución* mediante la cual determinó que Ocasio Quiñones no cualifica para beneficiarse del privilegio de libertad bajo palabra debido a que los factores en su contra son de mayor peso que los factores que lo favorecen. Así, la JLBP concluyó que el recurrente propuso el hogar de su progenitora, Carmen Quiñones, en el municipio de Toa Baja y propuso a Enrique Maeste Vega como candidato a amigo consejero, pero se ha solicitado al DCR la corroboración de ambos recursos en dos (2) ocasiones y no se ha recibido. Señaló, además, que el recurrente propuso a la compañía PJ Environment Group como oferta de empleo, pero según surge del *Informe Breve de Libertad Palabra* del 24 de junio de 2024, esta oferta de empleo no pudo ser corroborada por el DCR.

Consecuentemente, el 6 de noviembre de 2024, el recurrente presentó una *Moción de Reconsideración*. Sin embargo, la JLBP no tomó acción sobre la solicitud de reconsideración, por lo que perdió su jurisdicción.

A la luz del marco jurídico enunciado, las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas, supra.* Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal, supra.*

Nuestro Tribunal Supremo ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la

interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra.*

Cónsono con lo anterior, la sección 4.5 de la LPAU, *supra*, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por tal razón, nuestro máximo Foro ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro, supra.*

El caso ante *nos*, entre las determinaciones de hechos de la *Resolución* recurrida, la Junta concluyó que "[e]l peticionario propuso el hogar de su progenitora Carmen Quiñones en Paseo Alegre #2633 Segunda Sección Levittown en el municipio de Toa Baja. Este propuso a Enrique Maeste Vega como candidato a amigo consejero. La Junta ha solicitado al DCR la corroboración de ambos recursos en dos (2) ocasiones y no se ha recibido". Concluyó, además, que, "[e]l peticionario propuso a la Compañía "PJ Environment Group" como oferta de empleo. Según surgió del Informe Breve de Libertad Palabra de 24 de junio de 2024, esta oferta de empleo no pudo ser corroborada por el DCR".

Asimismo, en su *Resolución* la JLBP señaló que el recurrente no cualifica para beneficiarse del privilegio de libertad bajo palabra debido a que los factores en su contra son de mayor peso que los factores que lo favorecen. No obstante, lo anterior, al hacer un análisis exhaustivo del expediente ante nuestra consideración es nuestro deber puntualizar que, conforme a la *Resolución* recurrida,

seis (6) de las ocho (8) Determinaciones de Hechos le favorecen a Ocasio Quiñones. Así pues, las únicas Determinaciones de Hechos que no le favorecen al recurrido son por causas atribuibles al DCR y no a este.

Además, surge del expediente ante *nos* una Declaración Jurada del señor Andrés Figueroa Martínez, presunto encargado de la compañía J & A Environmental Group, donde establece claramente que hubo un mal entendido con la Social Sol V. López Rosario y que le indicó que lo llamara con una nueva fecha para entrevista, pero esta nunca lo llamó. Por lo tanto, la oferta de empleo no pudo ser corroborada, por causas atribuibles al DCR y no al recurrido.

En estas circunstancias y tomando en consideración que la parte recurrida se allanó a que el caso sea devuelto a la JLBP, para que la agencia revalúe el caso de Ocasio Quiñones, disponemos que el trámite más justo y razonable es revocar la *Resolución* recurrida y devolver el caso a la JLBP, para que emita una nueva determinación, dentro de un período de treinta (30) dias, cerciorándose, en primer lugar, de evaluar específicamente la oferta de empleo, el amigo consejero y el hogar propuesto.

De otro lado, evaluada la *Solicitud de Desestimación* que presentó la JLBP a través del Procurador General se declara *No Ha Lugar* la misma. Tal y como expresó el recurrente en su *Breve Réplica a Solicitud de Desestimación*, el 23 de diciembre de 2024, fue un día de cierre total en el Poder Judicial, por lo que la fecha de vencimiento era el próximo día laborable, entiéndase el 26 de diciembre de 2024; fecha en que se presentó el recurso que nos ocupa. Véase, *In re: Extensión de términos por motivo de concesión de los dias 28 de marzo, 26 de julio, 29 de noviembre, 23, 24, 30 y 31 de diciembre de 2024; 17 de abril, 28 de noviembre, 24 y 31 de*

*diciembre de 2025 y 5 de enero de 2026*, 2024 TSPR 2, 213 DPR ___ (2024).

**IV.**

Por los fundamentos antes expuestos, *revocamos* la *Resolución* recurrida y devolvemos el caso a la JLBP para que proceda conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones